**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| INTERNATIONAL REFUGEE ASSISTANCE PROJECT, INC., *One Battery Park Plaza, 33rd Fl. IRAP, New York, NY 10004*,<br><br>Plaintiff,<br><br>*v.*<br><br>UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES,<br><br>Defendant. | **COMPLAINT**<br><br>Civil Action No. 1:23-cv-3664 |

1.      This case is about vindicating Plaintiff International Refugee Assistance Project's ("IRAP") right to obtain records essential to representing current and future clients in appeals of their denial of admission under the U.S. Refugee Admissions Program ("USRAP").

2.      IRAP, a non-profit legal services organization, cannot prepare a meaningful administrative appeal for a refugee client without first obtaining the factual findings and legal reasoning for Defendant's denial and other records relevant to this decision from Defendant via the Freedom of Information Act ("FOIA").

3.      IRAP does not receive the full extent of records to which it is entitled from Defendant due to Defendant's policies of misapplying exemptions to them.

4.      This case seeks to end these policies so IRAP can get the records it needs to write timely, viable appeals for its refugee clients.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over this matter pursuant to 5 U.S.C. § 552(a)(4)(B), 5 U.S.C. § 706, and 28 U.S.C. § 1331.

6.      Venue is proper in this district under 5 U.S.C. § 552(a)(4)(B).

## PARTIES

7.      Plaintiff IRAP is a non-profit 501(c)(3) organization that provides legal aid and advocacy to refugees and other displaced persons, including those denied admission to the United States under USRAP by Defendant. IRAP's assistance includes filing FOIA requests with Defendant for clients' records and appealing their denials. IRAP has filed over thirty FOIA requests with Defendant for refugee clients' records since 2018 and intends to continue doing so in the future.

8.      Defendant U.S. Citizenship and Immigration Services is the agency within the U.S. Department of Homeland Security charged with adjudicating applications for admission as a refugee in USRAP. *See* 6 U.S.C. § 271(b)(3).

9.      Defendant maintains an A-file for each applicant, which contains records relevant to the applicant's USRAP application, including the referral document, interview notes and an Application Assessment for each merits interview, and any correspondence about the applicant.

## STATEMENT OF FACTS

### I.      USRAP ACCESS: THE UNHCR REFERRAL

#### A.      *USRAP Admission Is a Limited Government Benefit*

10.      USRAP is an interagency effort to implement the Refugee Act of 1980 by admitting refugees of special humanitarian concern to the United States. *See* Pub. L. No. 96-212, §§ 101, 207, 94 Stat. 102, 102-03 (1980) (codified at 8 U.S.C. §§ 1157, 1521 note).

11.     Admission to the United States through USRAP is available to a limited number of refugees each fiscal year. *See* 8 U.S.C. § 1157(a), (c).

12.     Historically and presently, this numerical limit is not enough for each of the millions of refugees in the world to enter the United States through USRAP.

13.     Most refugees cannot apply to USRAP directly.

### B.     *UNHCR & The UNHCR Referral*

14.     The most common way for a refugee to access USRAP is referral from the United Nations High Commissioner for Refugees ("UNHCR").

15.     UNHCR is the United Nations agency mandated by the United Nations General Assembly to provide international protection to refugees and seek permanent solutions to their problems, including through resettlement from their countries of asylum to the United States and other third countries.

16.     UNHCR completes a referral form for refugees it has identified and found to qualify for resettlement based on their individual needs ("hereinafter "UNHCR Referral").

17.     After completing a UNHCR Referral, UNHCR submits it to USRAP or the resettlement program of another suitable country.

18.     After submitting the UNHCR Referral, UNHCR follows-up on the submission's processing and addresses any requests for additional action by it or evidence from it.

19.     UNHCR may withdraw a UNHCR Referral from USRAP or another country's resettlement program at any time before its adjudication for resubmission elsewhere.

20.     Where Defendant or the agency of another country denies admission to a referred refugee, UNHCR reviews the decision and determines whether to resubmit that refugee to another country for resettlement consideration.

## II.    USRAP ADJUDICATION: THE APPLICATION ASSESSMENT

21.    On receipt of a UNHCR Referral or another type of USRAP submission, caseworkers create a USRAP case for each family unit on the submission.

22.    A USRAP case consists of one primary applicant plus any derivative spouse and/or child applicant(s).

23.    Caseworkers complete a refugee application for each applicant on a USRAP case to prepare the case for adjudication by Defendant.

24.    Allegations in Sections II.A. and II.B, *infra*, reflect Defendant's standard operating procedures for USRAP adjudication.

### A.    *Interviewing Officer Fills Out an Application Assessment*

25.    Generally, Defendant adjudicates a USRAP case by interviewing its primary applicant at least once about whether they satisfy the eligibility criteria in 8 U.S.C. § 1157(c)(1) and merit favorable exercise of the Secretary of Homeland Security's discretion.

26.    The interviewing officer takes notes about the questions asked in each such merits interview and the primary applicant's answers to these questions.

27.    The interviewing officer completes an Application Assessment in full or in part for each merits interview.

28.    An Application Assessment contains in form and substance the sections set forth in **Exhibit A**, though section names and numbers may vary in its different versions.

29.    An Application Assessment has sections addressing each eligibility criterium: being of "special humanitarian concern" to the United States; a "refugee" as defined in 8 U.S.C. § 1101(a)(42); "admissible" except as provided in 8 U.S.C. § 1157(c)(3); and not "firmly resettled in any foreign country" (hereinafter "eligibility sections"). *Compare* 8 U.S.C.

§ 1157(c)(1), *with* Ex. A, at 1-2 (titling these sections "Special Humanitarian Concern," "INA §101(A)—Applicant's Claim," and "Bars and Inadmissibilities").

30.     The interviewing officer records their findings about a primary applicant's credibility and satisfaction of the eligibility criteria addressed in the interview by checking the appropriate boxes in the Applicant Assessment's credibility and eligibility sections.

31.     The interviewing officer explains these findings in the spaces provided therein.

32.     The interviewing officer records a recommendation to grant or deny a USRAP case in the Application Assessment by ticking "yes" or "no" next to the question "Is the Applicant Eligible for Refugee Resettlement Pursuant to INA §207?" in the Assessment's decision section. *See* Ex. A, at 4.

33.     Where the recommendation is a denial, the interviewing officer also checks the box(es) in the decision section that correspond(s) to the reason(s) for denial.

34.     The interviewing officer may also justify their approval or denial in the space provided in the decision section, but need not do so where an Application Assessment's other sections contain adequate analysis for their decision.

**B.     *Reviewing Officer Completes the Application Assessment's Supervisory Review Section***

35.     After an interviewing officer completes the appropriate sections of the Application Assessment, a reviewing officer reviews it to determine whether the interviewing officer's findings, explanations, and recommended decision are supported by the record and consistent with law and policy (hereinafter "supervisory review").

36.     Supervisory review is deferential: where there are several defensible ways to apply legal standards or policies to the facts, the reviewing officer gives deference to the interviewing officer's conclusions.

37.     The reviewing officer records the result of their review—concurrence, reversal, or reinterview—in the Application Assessment's supervisory review section. *See* Ex. A, at 5.

38.     *Concurrence*: A reviewing officer checks the box for concurrence in the supervisory review section to adopt the interviewing officer's recommended decision.

    a.     Concurrence may be with or without correction or qualification.

    b.     Concurrence without correction or qualification adopts the interviewing officer's findings, explanations, and justification.

    c.     When concurring without correction or qualification, the reviewing officer need not complete the explanation field in the supervisory review section.

    d.     When concurring with correction or qualification, the reviewing officer corrects erroneous findings, explanations, or justification in the Assessment's credibility, decision, and eligibility sections and explains the correction(s) in the supervisory review section's explanation field.

39.     *Reversal*: A reviewing officer checks the box for overturning in the supervisory review section to reverse the interviewing officer's recommended decision.

    a.     Reversal means the interviewing officer's recommendation is not supported by the record and the record is sufficient to establish the contrary decision.

    b.     When reversing, the reviewing officer substantiates the reasons for overturning the recommendation in the supervisory review section's explanation field.

    c.     When reversing, the reviewing officer also alters the decision section to reflect their approval or denial and corrects findings and explanations in the credibility and eligibility sections as necessary.

40.     After supervisory review, any approval or denial marked in the Application Assessment's decision section is Defendant's final decision on a USRAP case so long as Defendant does not overturn the decision or conduct another merits interview in subsequent processing.

41.     The reasoning for Defendant's final decision consists of any uncorrected justification in the decision section, any explanation in the supervisory review section, and the findings and explanations in the eligibility and credibility sections underlying Defendant's decision.

## C.     *Post Adjudication Processes*

42.     Applicants on a USRAP case approved by Defendant receive a notice of eligibility.

43.     Approved applicants travel to and enter the United States on a transportation letter issued by the Department of State.

44.     Approved applicants do not receive visas to travel to and enter the United States.

45.     Applicants on a USRAP case denied by Defendant receive a notice of ineligibility, which provides only boilerplate explanation for denial.

46.     The denial reason(s) indicated on a notice of ineligibility correspond(s) to the denial reason(s) checked in the decision section of the corresponding Application Assessment. *See* Ex. B, at 4.

47.     Denied applicants may administratively appeal Defendant's decision by filing a request for review ("RFR").

48.     An RFR must include at least one of the following: (a) a detailed explanation of a significant error made by Defendant; and/or (b) new information that merits a change in decision.

49.     An RFR has a filing deadline of 90 days from receipt of a notice of ineligibility, though Defendant may consider an untimely RFR where delay was caused by circumstances beyond a denied applicant's control and/or other difficulties experienced by the applicant (hereinafter "excusable circumstances").

### III.     IRAP'S ASSISTANCE TO REFUGEES

50.     IRAP's mission is to create a world where refugees and all people seeking safety are empowered to claim their right to freedom of movement and a path to lasting refuge.

51.     IRAP advances this mission by representing USRAP applicants denied by Defendant in administrative appeals.

52.     IRAP has represented over 100 such USRAP applicants since 2012.

53.     Since at least 2016, IRAP's representation of such applicants generally entails filing FOIA requests with Defendant for the USRAP records in their A-files, appealing adverse FOIA determinations as needed, and submitting RFRs.

54.     When filing a FOIA request for a refugee client's records (hereinafter "USRAP File Request"), IRAP asks for all information and documentation pertaining to the refugee's application for USRAP resettlement, the A-file for the refugee, including but not limited to the refugee case file and all other unique records pertaining to their application for resettlement through USRAP, or a similar description of records.

55.     IRAP intends to continue filing USRAP File Requests and representing clients in administrative appeals as described in ¶¶ 51-54 in the future.

## IV.    DEFENDANT'S USRAP FOIA POLICIES

56.    Defendant applies the following policies (hereinafter "USRAP FOIA Policies"), as set forth in **Exhibit B**, to USRAP File Requests from IRAP and others requesting the same type of records:

### A.    *Withholding the UNHCR Referral in Part*

57.    Defendant has a blanket policy of withholding sections on the following topics from any UNHCR Referral responsive to a USRAP File Request under the deliberative process privilege pursuant to 5 U.S.C. § 552 (b)(5) (hereinafter "UNHCR Referral Withholding Policy"):

   a.   Legal, exclusion, and credibility analysis, *see* Ex. B, at 6;

   b.   Resettlement needs, *see id.* at 6; and

   c.   Specific needs and additional remarks (where containing information), *see id.* at 7.

### B.    *Withholding Interview Notes in Full*

58.    Defendant has a blanket policy of withholding the notes from any merits interview in full under 5 U.S.C. § 552(b)(7)(E) (hereinafter "Interview Note 7(E) Withholding Policy"). *See id.* at 11.

### C.    *Withholding the Application Assessment in Part*

59.    Defendant has a blanket policy of withholding the decision section of any Application Assessment responsive to a USRAP File Request in full under 5 U.S.C. § 552(b)(7)(E) (hereinafter "Application Assessment 7(E) Withholding Policy"). *See id.* at 10.

60.    Defendant has a blanket policy of withholding in full the credibility section of any Application Assessment responsive to a USRAP File Request under the deliberative process privilege pursuant to 5 U.S.C. § 552(b)(5). *See id*.

61.     Defendant has a blanket policy of withholding in full the eligibility sections of any Application Assessment responsive to a USRAP File Request (except the special humanitarian concern section) under the deliberative process privilege pursuant to 5 U.S.C. § 552(b)(5) (hereinafter in combination with ¶ 60 "Application Assessment DPP Withholding Policy"). *See id*.

**D.     *Withholdings of Emails and Other Records***

62.     Defendant has a blanket policy of withholding emails and certain other records responsive to a USRAP File Request and unrelated to the issuance or refusal of visas or permits to enter the United States under 5 U.S.C. § 552(b)(3) based on 8 U.S.C. § 1202(f) (hereinafter "1202(f) Withholding Policy"). *See id.* at 4, 21-22, 26.

**V.     USRAP FILE REQUESTS**

63.     This case challenges Defendant's actions with respect to four USRAP File Requests filed by IRAP, as summarized in the table below:

|     | Receipt number | Receipt date | Status |
|-----|----------------|--------------|--------|
| 1.  | NRC2022194185  | Aug. 8, 2022 | Granted and denied in part; appeal denied. |
| 2.  | NRC2022194242  | Aug. 8, 2022 | Remanded for additional search after appeal. |
| 3.  | NRC2023241385  | Aug. 2, 2023 | Remanded for additional search after appeal. |
| 4.  | NRC2023292140  | Sept. 14, 2023 | Remanded for additional search after appeal. |

**A.     *USRAP File Request No. 1***

64.     On August 8, 2022, Defendant received IRAP's USRAP File Request for all documents and information pertaining to a refugee client's application for USRAP resettlement (hereinafter "USRAP File Request No. 1").

65.     Defendant designated this request as NRC2022194185.

66.     Defendant produced responsive records on September 29, 2022.

67.     Defendant withheld 30 pages of records in part and another 24 pages in full,

including the following:

      a.   An Application Assessment's credibility section and eligibility sections

          (except the special humanitarian concern section) pursuant to its Application

          Assessment DPP Withholding Policy;

      b.   This Application Assessment's decision section pursuant to its Application

          Assessment 7(E) Withholding Policy;

      c.   Portions of an UNHCR Referral pursuant to its UNHCR Referral Withholding

          Policy; and

      d.   Unidentified records pursuant to its 1202(f) Withholding Policy.

68.     IRAP timely appealed the withholdings.

69.     Defendant affirmed its withholdings on March 3, 2023.

**B.     *USRAP File Request No. 2***

70.     On August 8, 2022, Defendant also received IRAP's USRAP File Request for all

documents and information pertaining to another refugee client's application for USRAP

resettlement (hereinafter "USRAP File Request No. 2").

71.     Defendant designated USRAP File Request No. 2 as NRC2022194242.

72.     Defendant issued a no records determination for USRAP File Request No. 2 after

its search did not locate responsive records.

73.     IRAP timely appealed Defendant's search for USRAP File Request No. 2.

74.     Defendant remanded USRAP File Request No. 2 for a further search on

December 8, 2022.

75.     Defendant later redesignated USRAP File Request No. 2 as REM2022000033.

76.     To date, IRAP has not received Defendant's determination on remand for USRAP File Request No. 2.

### C.     *USRAP File Request No. 3*

77.     On August 2, 2023, Defendant received IRAP's USRAP File Request for a refugee client's A-file, including but not limited to the refugee case file and all other unique records pertaining to their application for resettlement through USRAP (hereinafter "USRAP File Request No. 3").

78.     Defendant designated USRAP File Request No. 3 as NRC2023241385.

79.     Defendant issued a no records determination for USRAP File Request No. 3 after its search did not locate responsive records.

80.     IRAP timely appealed Defendant's search for USRAP File Request No. 3.

81.     On September 5, 2023, Defendant remanded USRAP File Request No. 3 for a further search.

82.     To date, IRAP has not received Defendant's determination on remand for USRAP File Request No. 3.

### D.     *USRAP File Request No. 4*

83.     On September 14, 2023, Defendant received IRAP's USRAP File Request for a refugee client's A-file, including but not limited to the refugee case file and all other unique records pertaining to their application for resettlement through USRAP (hereinafter "USRAP File Request No. 4").

84.     Defendant designated USRAP File Request No. 4 as NRC2023292140.

85.     Defendant issued a no records determination for USRAP File Request No. 4 after its search did not locate responsive records.

86.     IRAP timely appealed Defendant's search for USRAP File Request No. 4.

87.     On October 13, 2023, Defendant remanded USRAP File Request No. 4 for a further search.

88.     To date, IRAP has not received Defendant's determination on remand for USRAP File Request No. 4.

## VI.     REQUESTS FOR STANDARD OPERATING PROCEDURES & OTHER RECORDS

89.     On July 12, 2023, Defendant received IRAP's request for the current standard operating procedure for completing the Application Assessment and invoked a 10-day extension of its determination deadline pursuant to 5 U.S.C. § 552(a)(6)(B).

90.     Defendant designated this request as COW2023004750.

91.     On September 13, 2023, Defendant received IRAP's request for the current versions of five standard operating procedures, five training modules, and one manual, as well all versions of the TRIG 212(a)(3)(B) Exemption Worksheet and two Application Assessments. Again, it invoked a 10-day extension of its determination deadline pursuant to 5 U.S.C. § 552(a)(6)(B).

92.     Defendant designated this request as COW2023006264.

93.     Defendant's deadlines to make determinations on these two requests (hereinafter "Policy Requests") expired on August 23, 2023, and October 26, 2023, respectively. *See* 5 U.S.C. § 552(a)(6)(B).

94.     To date, Defendant has not made determinations on these Policy Requests.

## CLAIMS FOR RELIEF

**FIRST CLAIM FOR RELIEF UNDER FOIA AND THE APA, IN THE ALTERNATIVE: INTERVIEW NOTE 7(E) WITHHOLDING POLICY CONTRAVENES FOIA**

95.     IRAP incorporates by reference ¶¶ 1-94.

96.     Defendant's Interview Note 7(E) Withholding Policy violates FOIA. *See* 5 U.S.C. § 552(a)(3)(A), (b)(7)(E).

97.     For example, as a blanket policy, the Interview Note 7(E) Withholding Policy contravenes FOIA's requirement to apply 5 U.S.C. § 552(b)(7)(E) on a case-by-case basis.

98.     Also, the Interview Note 7(E) Withholding Policy contravenes FOIA's requirement to produce reasonably segregable non-exempt portions of interview notes. *See id.* § 552(b).

99.     At minimum, 5 U.S.C. § 552(b)(7)(E) does not apply to interview notes unrelated to law enforcement.

100.    Defendant's Interview Note 7(E) Withholding Policy impinges IRAP's legal right under FOIA to obtain records responsive to a USRAP File Request.

101.    Defendant's Interview Note 7(E) Withholding Policy delays IRAP's receipt of records essential to writing effective RFRs for clients whose USRAP applications Defendant has denied.

102.    Defendant's Interview Note 7(E) Withholding Policy impairs IRAP's ability to file effective RFRs within the deadline for doing so.

103.    Defendant's Interview Note 7(E) Withholding Policy requires IRAP to divert additional resources to counteract these impairments, including by filing administrative appeals for and litigating adverse FOIA determinations and explaining to Defendant the excusable circumstances that merit consideration of an untimely RFR.

104.     Defendant's Interview Note 7(E) Withholding Policy is likely to harm IRAP in the future since IRAP has pending USRAP File Requests of the same character as requests to which Defendant has previously applied this policy, including USRAP File Requests Nos. 2-4.

105.     Defendant's Interview Note 7(E) Withholding Policy is also likely to harm IRAP in the future since IRAP intends to continue representing denied USRAP applicants and filing USRAP File Requests during its representation, just as it has done for more than thirty clients since 2018.

**SECOND CLAIM FOR RELIEF UNDER FOIA AND THE APA, IN THE ALTERNATIVE: APPLICATION ASSESSMENT 7(E) WITHHOLDING POLICY CONTRAVENES FOIA**

106.     IRAP incorporates by reference ¶¶ 1-94.

107.     Defendant's Application Assessment 7(E) Withholding Policy violates FOIA. *See* 5 U.S.C. § 552(a)(3)(A), (b)(7)(E).

108.     For example, as a blanket policy, the Application Assessment 7(E) Withholding Policy contravenes FOIA's requirement to apply 5 U.S.C. § 552(b)(7)(E) on a case-by-case basis.

109.     Also, the Application Assessment 7(E) Withholding policy contravenes FOIA's requirement to produce reasonably segregable non-exempt portions of the Application Assessment. *See id.* § 552(b).

110.     At minimum, 5 U.S.C. § 552(b)(7)(E) does not apply to the checkboxes for approval, denial, or ineligibility reasons in an Application Assessment's decision section.

111.     Defendant's Application Assessment 7(E) Withholding Policy impinges IRAP's legal right under FOIA to obtain records responsive to a USRAP File Request.

112.     Defendant's Application Assessment 7(E) Withholding Policy delays IRAP's receipt of records essential to writing effective RFRs for clients whose USRAP applications Defendant has denied.

113.     Defendant's Application Assessment 7(E) Withholding Policy impairs IRAP's ability to file effective RFRs within the deadline for doing so.

114.     Defendant's Application Assessment 7(E) Withholding Policy requires IRAP to divert additional resources to counteract these impairments, including by filing administrative appeals for and litigating adverse FOIA determinations and explaining to Defendant the excusable circumstances that merit consideration of an untimely RFR.

115.     Defendant's Application Assessment 7(E) Withholding Policy is likely to harm IRAP in the future since IRAP has pending USRAP File Requests of the same character as requests to which Defendant has previously applied this policy, including USRAP File Requests Nos. 2-4.

116.     Defendant's Application Assessment 7(E) Withholding Policy is also likely to harm IRAP in the future since IRAP intends to continue representing denied USRAP applicants and filing USRAP File Requests during its representation, just as it has done for more than thirty clients since 2018.

**THIRD CLAIM FOR RELIEF CLAIM FOR RELIEF UNDER FOIA AND THE APA, IN THE ALTERNATIVE: APPLICATION ASSESSMENT DPP WITHHOLDING POLICY CONTRAVENES FOIA**

117.     IRAP incorporates by reference ¶¶ 1-94.

118.     Defendant's Application Assessment DPP Withholding Policy violates FOIA. *See* 5 U.S.C. § 552(a)(3)(A), (b)(5).

119.     For example, as a blanket policy, the Application Assessment DPP Withholding Policy contravenes FOIA's requirement to apply 5 U.S.C. § 552(b)(5) on a case-by-case basis.

16

120.    The Application Assessment DPP Withholding Policy also contravenes FOIA's requirement to produce reasonably segregable non-exempt portions of the Application Assessment. *See id.* § 552(b).

121.    At minimum, 5 U.S.C. § 552(b)(5) does not apply to findings and explanations in an Application Assessment's eligibility and credibility sections adopted by the reviewing officer making Defendant's final decision on a USRAP case and its application(s).

122.    At minimum, 5 U.S.C. § 552(b)(5) does not apply to corrections to an Application Assessment's eligibility and credibility sections by a reviewing officer making Defendant's final decision on a USRAP case and its application(s).

123.    Defendant's Application Assessment DPP Withholding Policy impinges IRAP's legal right under FOIA to obtain records responsive to a USRAP File Request.

124.    Defendant's Application Assessment DPP Withholding Policy delays IRAP's receipt of records essential to writing effective RFRs for clients whose USRAP applications Defendant has denied.

125.    Defendant's Application Assessment DPP Withholding Policy impairs IRAP's ability to file effective RFRs within the deadline for doing so.

126.    Defendant's Application Assessment DPP Withholding Policy requires IRAP to divert additional resources to counteract these impairments, including by filing administrative appeals for and litigating adverse FOIA determinations and explaining to Defendant the excusable circumstances that merit consideration of an untimely RFR.

127.    Defendant's Application Assessment DPP Withholding Policy is likely to harm IRAP in the future since IRAP has pending USRAP File Requests of the same character as

requests to which Defendant has previously applied this policy, including USRAP File Requests Nos. 2-4.

128.    Defendant's Application Assessment DPP Withholding Policy is also likely to harm IRAP in the future since IRAP intends to continue representing denied USRAP applicants and filing USRAP File Requests during its representation, just as it has done for more than thirty clients since 2018.

**FOURTH CLAIM FOR RELIEF CLAIM FOR RELIEF UNDER FOIA AND THE APA, IN THE ALTERNATIVE: UNHCR REFERAL WITHHOLDING POLICY CONTRAVENES FOIA**

129.    IRAP incorporates by reference ¶¶ 1-94.

130.    Defendant's UNHCR Referral Withholding Policy violates FOIA. *See* 5 U.S.C. § 552(a)(3)(A), (b)(5).

131.    For example, as a blanket policy, Defendant's UNHCR Referral Withholding Policy contravenes FOIA's requirement to apply 5 U.S.C. § 552(b)(5) on a case-by-case basis.

132.    Also, Defendant's UNHCR Referral Withholding Policy contravenes FOIA's requirement to produce reasonably segregable, non-exempt portions of the UNHCR Referral. *See id.* § 552(b).

133.    5 U.S.C. § 552(b)(5) only protects certain "inter-agency or intra-agency memorandums or letters." *Id.* § 552(b)(5).

134.    UNHCR is not an agency of the U.S. Government. *See id.* § 551(1).

135.    To the extent that UNHCR acts as a consultant to Defendant or another agency of the U.S. Government by submitting a referral, UNHCR is communicating in its own interest or on behalf of refugees whose interests might be affected by the agency action the referral addresses and is seeking an immigration benefit inadequate to satisfy all refugees.

136.     Defendant's UNHCR Referral Withholding Policy impinges IRAP's legal right under FOIA to obtain records responsive to a USRAP File Request.

137.     Defendant's UNHCR Referral Withholding Policy delays IRAP's receipt of records essential to writing effective RFRs for clients whose USRAP applications Defendant has denied.

138.     Defendant's UNHCR Referral Withholding Policy impairs IRAP's ability to file effective RFRs within the deadline for doing so.

139.     Defendant's UNHCR Referral Withholding Policy requires IRAP to divert additional resources to counteract these impairments, including by filing administrative appeals for and litigating adverse FOIA determinations and explaining to Defendant the excusable circumstances that merit consideration of an untimely RFR.

140.     Defendant's UNHCR Referral Withholding Policy is likely to harm IRAP in the future since IRAP has pending USRAP File Requests of the same character as requests to which Defendant has previously applied this policy, including USRAP File Requests Nos. 2-3.

141.     Defendant's UNHCR Referral Withholding Policy is also likely to harm IRAP in the future since IRAP intends to continue representing denied USRAP applicants and filing USRAP File Requests during its representation, just as it has done for more than thirty clients since 2018.

**FIFTH CLAIM FOR RELIEF CLAIM FOR RELIEF UNDER FOIA AND THE APA, IN THE ALTERNATIVE: 1202(f) WITHHOLDING POLICY CONTRAVENES FOIA**

142.     IRAP incorporates by reference ¶¶ 1-94.

143.     Defendant's 1202(f) Withholding Policy violates FOIA. *See* 5 U.S.C. § 552(a)(3)(A), (b)(3).

144.    For example, as a blanket policy, Defendant's 1202(f) Withholding Policy contravenes FOIA's requirement to apply 5 U.S.C. § 552(b)(3) on a case-by-case basis.

145.    Defendant's 1202(f) Withholding Policy also contravenes FOIA's requirement to produce reasonably segregable, non-exempt portions of records. *Id.* § 552(b).

146.    5 U.S.C. § 552(b)(3) only protects records "specifically exempted from disclosure" by certain statutes. *See id.* § 552(b)(3).

147.    8 U.S.C § 1202(f) only exempts from disclosure "records of the Department of State and of diplomatic and consular offices of the United States pertaining to the issuance or refusal of visas or permits to enter the United States." 8 U.S.C § 1202(f).

148.    Emails and other records responsive to a USRAP File Request and related solely to an application for admission as a refugee do not pertain to the issuance or refusal of a visa or permit to the enter the United States.

149.    Defendant's 1202(f) Withholding Policy impinges IRAP's legal right under FOIA to obtain records responsive to a USRAP File Request.

150.    Defendant's 1202(f) Withholding Policy delays IRAP's receipt of records essential to writing effective RFRs for clients whose USRAP applications Defendant has denied.

151.    Defendant's 1202(f) Withholding Policy impairs IRAP's ability to file effective RFRs within the deadline for doing so.

152.    Defendant's 1202(f) Withholding Policy requires IRAP to divert additional resources to counteract these impairments, including by filing administrative appeals for and litigating adverse FOIA determinations and explaining to Defendant the excusable circumstances that merit consideration of an untimely RFR.

153.    Defendant's 1202(f) Withholding Policy is likely to harm IRAP in the future since IRAP has pending USRAP File Requests of the same character as requests to which Defendant has previously applied this policy, including USRAP File Requests Nos. 2-4.

154.    Defendant's 1202(f) Withholding Policy is also likely to harm IRAP in the future since IRAP intends to continue representing denied USRAP applicants and filing USRAP File Requests during its representation, just as it has done for more than thirty clients since 2018.

## SIXTH CLAIM FOR RELIEF: VIOLATION OF FOIA
## MISAPPLYING FOIA EXEMPTIONS TO USRAP FILE REQUEST NO. 1

155.    IRAP incorporates by reference ¶¶ 1-94.

156.    Defendant has a legal obligation under FOIA to make records responsive to USRAP File Request No. 1 promptly available to IRAP, including but not limited to, those it withheld under its USRAP FOIA Policies. *See* 5 U.S.C. § 552(a)(3)(A).

157.    IRAP has exhausted administrative remedies for the records sought in this Request.

158.    Defendant's failure to produce these records violates FOIA and has no legal basis. *See id.*

## SEVENTH CLAIM FOR RELIEF: VIOLATION OF FOIA, AND THE APA, IN THE
## ALTERNATIVE: FAILURE TO MAKE DETERMINATIONS ON USRAP FILE
## REQUEST NOS. 2-4.

159.    IRAP incorporates by reference ¶¶ 1-94.

160.    Defendant has a legal obligation under FOIA to make records responsive to USRAP File Requests Nos. 2-4 "promptly available" to IRAP. *See* 5 U.S.C. § 552(a)(3)(A), (a)(6)(C)(i).

161.    Defendant has possession, custody, or control of records responsive to USRAP File Requests Nos. 2-4.

162.     Defendant's failure to conduct a reasonable search for such records and make them "promptly available" to IRAP violates FOIA and has no legal basis. *See id.* § 552(a)(3)(A); *cf. id.* § 552(a)(6) (setting a 20-business day deadline in the first instance and on appeal).

163.     In the alternative, Defendant's failure to conduct a reasonable search for such records and make them available to IRAP since receiving USRAP File Requests Nos. 2-4 is unreasonable in violation of the APA. *See id.* § 555(b).

164.     IRAP has exhausted administrative remedies for the records sought in USRAP File Requests Nos. 2-4. *See id.* § 552(a)(6)(C).

## EIGHTH CLAIM FOR RELIEF: VIOLATION OF FOIA
## FAILURE TO MAKE DETERMINATION ON POLICY REQUESTS

165.     IRAP incorporates by reference ¶¶ 1-94.

166.     Defendant has a legal obligation under FOIA to make a determination on IRAP's Policy Requests within 30 business days of receipt and make responsive records promptly available to IRAP. *See* 5 U.S.C. § 552(a)(3)(A), (a)(6)(A)(ii), (a)(6)(B)(i).

167.     Defendant has possession, custody, or control of records responsive to the Policy Requests.

168.     Defendant's failure to conduct a reasonable search for such records, make determinations on their production to IRAP within 30 business days of receiving each Policy Request, and promptly produce these records violates FOIA and has no legal basis. *See id*. § 552(a)(3)(A), (a)(6)(A)(ii), (a)(6)(B)(i).

169.     IRAP has exhausted administrative remedies for the records sought in the Policy Requests. *See id.* § 552(a)(6)(C).

## <u>PRAYER FOR RELIEF</u>

**WHEREFORE**, IRAP respectfully requests that this Court:

1.    Declare the following:

    a.  Each of Defendant's USRAP FOIA Policies violates FOIA;

    b.  Defendant's failure to produce non-exempt records responsive to USRAP File Request No. 1 violates FOIA.

    c.  Defendant's failure to conduct reasonable searches for records responsive to the Policy Requests and USRAP File Requests Nos. 2-4, make determinations on responsive records, and make such records promptly available to IRAP to date violates FOIA, or in the alternative as to USRAP File Requests Nos. 2-4, is unreasonable in violation of the APA.

2.    Vacate Defendant's USRAP FOIA Policies or enjoin Defendant from applying them to IRAP's USRAP File Requests;

3.    Enjoin Defendant from withholding the following records responsive to a USRAP File Request:

    a.  Interview notes unrelated to law enforcement under 5 U.S.C. § 552(b)(7)(E);

    b.  Sections of any Application Assessment, including:

        i.  Checkboxes for approval, denial, or ineligibility reasons in an Application Assessment's decision section under 5 U.S.C. § 552(b)(7)(E);

        ii.  Findings and explanations in an Application Assessment's credibility and eligibility sections under 5 U.S.C. § 552(b)(5) where adopted by the reviewing officer making Defendant's final decision on a USRAP case and its application(s); and

        iii.  Corrections to findings and explanations in an Application Assessment's eligibility and credibility sections under 5 U.S.C. § 552(b)(5) where made

by the reviewing officer making Defendant's final decision on a USRAP

case and its application(s).

    c.   Any UNHCR Referral under 5 U.S.C. § 552(b)(5); and

    d.   Emails and certain other records not pertaining to the issuance or refusal of a visa

or permit to the enter the United States under 5 U.S.C. § 552(b)(3) based on 8

U.S.C. § 1202(f).

    4.     Enjoin Defendant to make records responsive to the Policy Requests and USRAP

File Requests Nos. 1-4 promptly available to IRAP, including records responsive to USRAP File

Request No. 1 that Defendant withheld under its USRAP FOIA Policies.

    5.     Award Plaintiff's costs and reasonable attorneys' fees in this action as provided

by 5 U.S.C. § 552(a)(4)(E); and

    6.     Grant other such relief as the Court may deem just and proper.

Respectfully submitted,               Dated: December 8, 2023

/s/ Chris Opila

Christopher ("Chris") Opila
Mariko Hirose
International Refugee Assistance Project
One Battery Park Plaza
Thirty-Third Floor, IRAP
New York, NY, 10004
Tel: (646) 946-7381
copila@refugeerights.org